1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. FORBUSH, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>NTI-CA INC., a Nevada corporation, dba NTI GROUND TRANS; JOHN E. KINDT, an individual; and DOES 1 through 10 inclusive<br><br>                                  Defendants. | Case No.:  22-cv-00141-H-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 34.] |

On November 26, 2024, Plaintiff Michael J. Forbush filed a motion for default judgment against Defendants NTI-CA, Inc. doing business as NTI Ground Trans ("NTI") and John E. Kindt.  (Doc. No. 34.)  On December 17, 2024, the Court issued an order requiring Plaintiff to serve Defendants and general counsel for Defendant NTI with a copy of the order and Plaintiff's motion for default judgment.  (Doc. No. 35.)  On December 26, 2024, Plaintiff filed proofs of service showing that it complied with the Court's December 17, 2024 Order.  (Doc. Nos. 36-38.)

A hearing on Plaintiff's motion is currently scheduled for Monday, February 10, 2025 at 10:30 a.m.  The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument, submits the

motion on the parties' papers, and vacates the hearing.  For the reasons below, the Court grants in part and denies in part Plaintiff's motion for default judgment against Defendants NTI and Kindt.

## Background

The following factual background is taken from the allegations in Plaintiff's complaint.  Defendant NTI is a national transportation company that provides airport shuttle and luxury sedan and SUV transportation services in San Diego, California, Los Angeles, California, Las Vegas, Nevada, and New York City, New York.  (Doc. No. 1, Compl. ¶ 13.)  Defendant John E. Kindt is the Executive Vice-President and Chief Operating Officer of NTI.  (Id. ¶ 10.)

In January 2020, Plaintiff began working as a full-time employee of NTI as a manager for NTI's San Diego office.  (Id. ¶¶ 14, 15.)  On January 29, 2021, Kindt informed Plaintiff that he was being furloughed from his employment at NTI due to a reduction in work force.  (Id. ¶ 16.)  At the time of Plaintiff's furlough and/or termination, Kindt promised that NTI would continue to provide Plaintiff with health insurance coverage under NTI's group health plan.  (Id. ¶ 17.)

Plaintiff alleges that his furlough and/or termination on January 29, 2021, was a "qualifying event" under NTI's group health plan.  (Id. ¶¶ 18, 30.)  Plaintiff further alleges that, in light of that, NTI had an obligation under 29 U.S.C. § 1166 to provide Plaintiff with notice of his rights under COBRA within 44 days of his furlough and/or termination.  (Id. ¶ 32.)

On March 28, 2021, NTI provided Plaintiff with an enrollment form for NTI's group health plan effective April 1, 2021.  (Id. ¶ 19.)  Plaintiff completed the enrollment form and submitted it to NTI the next day.  (Id.)

On March 30, 2021, Kindt emailed Plaintiff and asked him to obtain alternative health insurance.  (Id. ¶ 20.)  Plaintiff then became concerned that NTI was ending his coverage under NTI's group health plan, so Plaintiff contacted James Gleich, NTI's CEO, to clarify his coverage status.  (Id.)  Later that same day, Kindt sent an email to Plaintiff

22-cv-00141-H-RBB

"stating that he 'was not going to push [Forbush] off until and unless [he found] something.'" (Id.)  Based on that statement, Plaintiff reasonably believed that NTI would continue to provide him with health insurance under NTI's group health plan.  (Id.)

On June 8, 2021, Plaintiff suffered a heart attack which required emergency heart surgery.  (Id. ¶ 21.)  Plaintiff was billed $511,223.56 for the medical services he received related to his heart surgery.  (Id. ¶ 23; see Doc. No. 11-3, Hallet Decl. Ex. A.)

On July 30, 2021, Plaintiff received a notice from NTI's human resources manager stating that his medical benefits were to be terminated effective August 1, 2021, due to a COBRA qualifying event ("termination") and provided information regarding his COBRA rights.  (Doc. No. 1, Compl. ¶ 22; see Doc. No. 11-6, Hallet Decl. Ex. D.)  Plaintiff never received notification of his COBRA rights prior to the July 30, 2021 notice.  (Doc. No. 1, Compl. ¶ 22.)

Plaintiff received an Explanation of Benefits letter dated October 22, 2021 from Employer Driven Insurance Services ("EDIS") – the claim administrator for NTI's health plan during the time of the heart attack and the surgery.  (Id. ¶ 23; Doc. No. 11-3, Hallet Decl. Ex. A.)  The letter stated that coverage for the medical services related to Plaintiff's emergency heart surgery was being denied on the grounds that Plaintiff was not an eligible member of the plan at the time of service.  (Id.)  Plaintiff appealed EDIS's denial of the claims.  (Doc. No. 1, Compl. ¶ 24; Doc. No. 11-6, Hallet Decl. Ex. D.)  In a letter dated December 1, 2021, EDIS affirmed its denial of the claims based on information from NTI stating that Plaintiff's termination date and "last date actively at work" was January 29, 2021.  (Doc. No. 1, Compl. ¶ 25; Doc. No. 11-6, Hallet Decl. Ex. E.)

On February 1, 2022, Plaintiff filed a complaint against Defendants NTI and Kindt, alleging claims for: (1) failure to provide notification of COBRA rights in violation of 29 U.S.C. § 1166; (2) failure to provide notification of Cal-COBRA rights in violation of California Insurance Code § 10128.55; (3) breach of contract; (4) negligence; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) declaratory relief.  (Doc. No. 1, Compl. ¶¶ 27-84.)  On February 18, 2022, Plaintiff filed a proof of service as to NTI.

(Doc. No. 3.)  On March 3, 2023, Plaintiff filed a proof of service as to Kindt.  (Doc. No. 4.)

On April 26, 2022, Plaintiff filed a notification of bankruptcy proceedings as to NTI.  (Doc. No. 6.)  On April 27, 2022, the Clerk of Court entered default against Defendant Kindt.  (Doc. No. 7.)  On July 14, 2022, Plaintiff filed a notice stating that NTI's Chapter 11 bankruptcy proceedings had been dismissed.  (Doc. No. 8.)  On July 15, 2022, the Clerk of Court entered a default against Defendant NTI.  (Doc. No. 10.)

On December 8, 2022, Plaintiff filed a motion for default judgment against Defendants.  (Doc. No. 11.)  On May 3, 2023, the Court denied Plaintiff's motion for default judgment without prejudice on the grounds that Plaintiff failed to demonstrate that he properly served either of the Defendants in this action.  (Doc. No. 18.)  On June 1, 2023, Plaintiff filed new proofs of service as to Defendants NTI and Kindt.  (Doc. Nos. 20, 21.)  On August 7, 2023, the Court denied Plaintiff's motion for reconsideration of the Court's May 3, 2023 order denying his motion for default judgment.  (Doc. No. 23.)  On February 6, 2024, the Court again entered a default against Defendant Kindt.  (Doc. No. 27.)

On March 19, 2024, the Court granted Plaintiff's motion for an order allowing alternative service of process on Defendant NTI through the California Secretary of State pursuant to Federal Rule of Civil Procedure 4(h)(1) and California Code of Civil Procedure § 416.10(d).  (Doc. No. 29.)  On March 25, 2024, Plaintiff filed a new proof of service as to Defendant NTI.  (Doc. No. 30.)  On May 6, 2024, the Court again entered a default against Defendant NTI.  (Doc. No. 32.)

By the present motion, Plaintiff moves pursuant to Federal Rule of Civil Procedure 55(b) for a default judgment against Defendants NTI and Kindt.  (Doc. No. 34.)  Specifically, Plaintiff requests that the Court enter a joint and several default judgment against Defendants NTI and Kindt and award Plaintiff damages, costs, attorney's fees and prejudgment interest in the total amount of $794,446.14.  (Doc. No. 34-1 at 23.)

/ / /

/ / /

## Discussion

I.   **Jurisdictional and Procedural Requirements**

    A.   <u>Subject Matter Jurisdiction and Personal Jurisdiction</u>

    Before evaluating the merits of a motion for default judgment, the Court has the affirmative duty to ensure proper subject matter jurisdiction and personal jurisdiction when a party seeks default judgment.  <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction – specifically, federal question jurisdiction under 28 U.S.C. § 1331 – over Plaintiff's claim for failure to provide notification of COBRA rights in violation of 29 U.S.C. § 1166 because that claim seeks relief under a federal law.  (See Doc. No. 1, Compl. ¶¶ 27-38.)  <u>See</u> <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 378–79 (2012) ("[W]hen federal law creates a . . . right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331.").

    In addition, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's remaining state law claims because all of Plaintiff's claims derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.  <u>See</u> <u>Arroyo v. Rosas</u>, 19 F.4th 1202, 1209 (9th Cir. 2021); <u>Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.</u>, 333 F.3d 923, 925 (9th Cir. 2003) ("Supplemental jurisdiction is constitutional so long as the pendent state law claim is part of the same 'case or controversy' as the federal claim.  Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.").  As such, the Court has subject matter jurisdiction over all of the claims in Plaintiff's complaint.

    In addition, the Court has personal jurisdiction over Defendants NTI and Kindt.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800–01 (9th Cir.

2004).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  Id. at 801.  Minimum contacts may be established via general jurisdiction or specific jurisdiction.  See Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).

In the complaint, Plaintiff alleges that Defendant Kindt is an individual resident of Los Angeles, California.  (Doc. No. 1, Compl. ¶ 10.)  Indeed, Plaintiff's proof of service lists Defendant Kindt's usual place of abode as being in Torrance, California.  (See Doc. No. 21.)  Because Defendant Kindt is a resident of and is domiciled in California, the Court has general jurisdiction over him.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

In the complaint, Plaintiff alleges that Defendant NTI is a Nevada corporation that is registered and authorized to do business in California and provides airport shuttle and luxury sedan services in San Diego, California and Los Angeles, California.  (Doc. No. 1, Compl. ¶¶ 9, 13.)  Plaintiff further alleges that he was employed by Defendant NTI as a manager for NTI's San Diego office.  (Id. ¶ 14.)  And all of Plaintiff's claims arise out of his employment by NTI in its San Diego office.  (See generally id. ¶¶ 13-84.)  These allegations are sufficient to establish that the Court has specific jurisdiction over Defendant NTI.

The Ninth Circuit has established a three-prong test for analyzing specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial

justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

By registering to do business in California, having offices in California, and employing California residents, Defendant NTI has purposefully availed itself of the privilege of conducting activities in California and has also purposefully directed its activities to California. Further, all of Plaintiff's claims arise out of or are related to Defendant NTI's California contacts, specifically the San Diego office of its transportation business. And the exercise of personal jurisdiction over Defendant NTI in these circumstances would be reasonable. As such, the Court has specific jurisdiction over Defendant NTI. In sum, subject matter jurisdiction and personal jurisdiction are proper in this action.

### B.    Proper Service

Before evaluating the merits of a motion for default judgment, the Court must also consider the adequacy of service of process on the parties against whom the default is requested. Indian Hills Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021); DFSB Kollective Co. v. Bourne, 897 F. Supp. 2d 871, 877 (N.D. Cal. 2012); see also Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside."). This is because "[a] federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988); see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process.").

Plaintiff has provided the Court with a proof of service stating that he served Defendant Kindt with the complaint and summons on May 26, 2023 pursuant to Federal

Rule of Civil Procedure 4 and California Code of Civil Procedure § 415.20.  (Doc. No. 21.)  Federal Rule of Civil Procedure 4(e)(1) permits service on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  California Code of Civil Procedure § 415.20 permits substituted service of an individual in the following manner:

> (b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.  Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Plaintiff's proof of service states that Defendant Kindt was served by leaving a copy of the complaint and summons at his usual place of adobe in Torrance, California with "Anna 'DOE,'" a person pf suitable age who resides there.  (Doc. No. 21.)  The proof of service further states that the process server thereafter mailed via first-class mail, postage prepaid the complaint and summons to Kindt's usual place of abode in Torrance.  (Id.)  The proof of service also includes an affidavit of reasonable diligence completed by the process server.  (Id.)  As such, Plaintiff has demonstrated proper service as to Defendant Kindt pursuant to Federal Rule of Civil Procedure 4(e)(1) and California Code of Civil Procedure § 415.20.

As to Defendant NTI, Federal Rule of Civil Procedure 4(h) governs service on corporations and provides that a corporation must be served: "(1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual . . . ."  Fed. R. Civ. P. 4(h)(1).  Federal Rule of Civil Procedure 4(e)(1) permits service on

22-cv-00141-H-RBB

an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

California Code of Civil Procedure § 416.10 provides:

A summons may be served on a corporation by delivering a copy of the summons and the complaint by any of the following methods:

. . .

(d) If authorized by any provision in Section 1701, 1702, 2110, or 2111 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by that provision.

Cal. Code. Civ. Pro. § 416.10.

California Corporations Code § 2111(a) further provides:

If the agent designated for the service of process is a natural person and cannot be found with due diligence at the address stated in the designation . . . then the court may make an order that service be made by personal delivery to the Secretary of State or to an assistant or deputy secretary of state of two copies of the process together with two copies of the order . . . . Service in this manner is deemed complete on the 10th day after delivery of the process to the Secretary of State.

Cal. Corp. Code § 2111(a).

On March 19, 2024, the Court granted Plaintiff's motion and authorized Plaintiff to effective service of process on Defendant NTI through the California Secretary of State pursuant to California Corporations Code § 2111(a). (Doc. No. 29.) Plaintiff has provided the Court with a proof of service showing that it served Defendant NTI through the California Secretary of State with the summons and complaint on March 20, 2024. (Doc. No. 30.) As such, Plaintiff has demonstrated proper service as to Defendant NTI pursuant to Federal Rules of Civil Procedure 4(h) ad 4(e)(1), California Code of Civil Procedure §

416.10(d), and California Corporations Code § 2111(a).[1]

## II.    Review of Requested Default Judgment

### A.    Legal Standard

A court may enter default judgment against a defendant who has failed to plead or otherwise defend an action.  Fed. R. Civ. P. 55(b).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  In determining whether to exercise its discretion to grant default judgment, a district court considers: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  At the default judgment stage, well-pleaded factual allegations of the complaint are taken as true, except those related to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987); see also Fed. R. Civ. P. 8(b)(6) ("An allegation–other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied.").

### B.    The Merits of Plaintiff's Claim and the Sufficiency of the Complaint

In evaluating a motion for default judgment, the Court must consider: "the merits of plaintiff's substantive claim" and "the sufficiency of the complaint."  Eitel, 782 F.2d at 1471–72; see also Seismic Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) ("'[A] trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6).'" (quoting Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987))).  "The Ninth Circuit has suggested that the [] two Eitel factors involving the substantive merits of

---

[1]    In addition to properly serving Defendants with the summons and complaint in this action, on December 20, 2024, Plaintiff served Defendants and general counsel for Defendant NTI with a copy of the present motion for default judgment.  (Doc. Nos. 35-38.)

plaintiff's claim and the sufficiency of the complaint require that plaintiffs' allegations state a claim on which the [plaintiff] may recover." Ewing v. Encor Solar, LLC, No. 18-CV-2247-CAB-MDD, 2019 WL 4193363, at *2 (S.D. Cal. Sept. 3, 2019).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will be deemed sufficient if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In assessing the sufficiency of a complaint, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State

22-cv-00141-H-RBB

Council of Carpenters, 459 U.S. 519, 526 (1983).

> i.    Plaintiff's Claim for Violation of 29 U.S.C. § 1166

In his complaint, Plaintiff alleges a claim against Defendants NTI and Kindt for failure to provide him with notification of his COBRA rights in violation of 29 U.S.C. § 1166.[2]   (See Doc. No. 1, Compl. ¶¶ 27-38.)   The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") "amended ERISA, among other statutes, to require an employer who sponsors a group health plan to give the plan's qualified beneficiaries the opportunity to elect continuation coverage under the plan when the beneficiaries might otherwise lose coverage upon the occurrence of certain qualifying events, including the termination of the covered employee's employment (except in cases of gross misconduct)." Jass v. CherryRoad Techs., Inc., 472 F. Supp. 3d 787, 801 (D. Haw. 2020) (quoting Geissal v. Moore Med. Corp., 524 U.S. 74, 80 (1998)).

COBRA "in particular, provides that within 30 days of employment termination, 'the employer of an employee under a plan must notify the administrator of [the employment termination].'"  Id. (quoting 29 U.S.C. § 1166(a)(2)).  "Then, 'within 14 days . . . of the date on which the administrator is notified,' 'the administrator shall notify . . . [the] qualified beneficiary' of his or her right under COBRA to elect continuation health care coverage." Id. (quoting 29 U.S.C. § 1166(a)(4)(A), (c)).  "ERISA's civil enforcement

---

[2]    It is unclear from the complaint whether Plaintiff's claim for failure to provide him with notification of his COBRA rights in violation of 29 U.S.C. § 1166 is being brought against just Defendant NTI or both Defendants NTI and Kindt.  The header for the § 1166 claim states that the claim is being brought "Against NTI-CA INC." as opposed to the headers for other claims in the complaint which specifically state that the claim is being brought against "All Defendants."  (Compare Doc. No. 1, Compl. at p.6 with id. at pp. 9, 10.)  But the allegations in support of Plaintiff's claim for failure to provide notification of COBRA rights in violation of 29 U.S.C. § 1166 refer to "Defendants."  (See, e.g., id. ¶¶ 28, 31-33.)  As such, out of an abundance of caution, the Court will construe Plaintiff's claim for failure to provide him with notification of his COBRA rights in violation of 29 U.S.C. § 1166 as being asserted against both Defendants NTI and Kindt in assessing the sufficiency of the claim.

provision grants a plan 'participant or beneficiary' a cause of action to sue '[a]ny administrator' who fails to comply with 'the [notice] requirements' in Section 1166(a)(4)." Id. (quoting 29 U.S.C. § 1132(a)(1)(A), (c)(1)).

In the complaint, Plaintiff alleges that he was employed by Defendant NTI, and Defendant Kindt was NTI's Executive Vice President and Chief Operating Officer.  (See Doc. No. 1, Compl. ¶¶ 10, 14-15.)  ERISA's civil enforcement provision only provides a plan participant or beneficiary a cause of action for failure to notify of COBRA rights against a plan "administrator."  29 U.S.C. § 1132(a)(1)(A), (c)(1); Jass, 472 F. Supp. 3d at 801.  It does not provide for a cause of action for failure to notify of COBRA rights against an "employer."  See Marceau v. Idaho, No. 1:09-CV-00514-N-EJL, 2011 WL 3439178, at *11 (D. Idaho Aug. 5, 2011) ("While it is true that notification of such rights must be provided to a 'qualified beneficiary' upon the occurrence of a 'qualifying event,' the clear text of the statute provides that it is not the obligation of an employer to do so."); see, e.g., Vincent v. Wells Fargo Guard Servs., Inc., 44 F. Supp. 2d 1302, 1304–05 (S.D. Fla. 1999) (granting summary judgment of plaintiff's § 1166 claim on the grounds that defendant was his employer and not the plan administrator).  And ERISA does not provide for a cause of action for failure to notify of COBRA rights against a "supervisor."

In the complaint, Plaintiff alleges that "Defendants were the Plan Sponsor and/or Plan Administrator for NTI's group health plan in effect at the time of Plaintiff's furlough and/or termination." (Doc. No. 1, Compl. ¶ 31.)  But conclusory allegations such as these are insufficient to properly state a claim for relief, and a Court need not accept such conclusory statements as true.  See Iqbal, 556 U.S. at 678; see also Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default.").  Further, a review of Plaintiff's own exhibits attached to his motion for default judgment appear to show that the "administrator" for NTI's group health care plan during the relevant period was "Anthem" and then later "EDIS."  (See Doc. No. 34-7, Hallett Decl. Ex. E; see also Doc. No. 34-3, Hallett Decl. Ex. A.)  And this is consistent with other allegations in

the complaint.  (See, e.g., Doc. No. 1, Compl. ¶ 23 ("Plaintiff received an Explanation of Benefits dated October 22, 2021, from Employer Driven Insurance Services ('EDIS'), the claim administrator for NTI's health plan . . . .").)  Because Anthem and EDIS – not NTI and Kindt – were the administrators of NTI's heath care plan, Plaintiff's claims against Defendants NTI and Kindt for failure to provide him with notification of his COBRA rights in violation of 29 U.S.C. § 1166 is defective as a matter of law.  See Marceau, 2011 WL 3439178, at *11; Vincent, 44 F. Supp. 2d at 1304–05.  In sum, because it appears that Defendants were not the administrators of Plaintiff's health care plan, Plaintiff is not entitled to a default judgment on his claim against Defendants for violation of 29 U.S.C. § 1166.

### ii.   Plaintiff's Claim for Violation of California Insurance Code § 10128.50

In the complaint, Plaintiff alleges a claim against Defendants for violation of California Insurance Code § 10128.50.  (Doc. No. 1, Compl. ¶¶ 39-49.)  Plaintiff's claim against Defendants for violation of California Insurance Code § 10128.50 is derivative of his claim for violation of 29 U.S.C. § 1166.  (See Doc. No. 34-1 at 10 ("For the same reasons Mr. Forbush's Complaint sufficiently alleges a meritorious claim for violation of 29 U.S.C. § 1166, he has also sufficiently alleged a claim for violation of Cal-COBRA and specifically California Insurance Code § 10128.55.").)  In light of this, because Plaintiff is not entitled to a default judgment on his § 1166 claim, and Plaintiff's § 10128.50 is derivative of that claim, Plaintiff is also not entitled to a default judgment on his claim for violation of California Insurance Code § 10128.50.

### iii.   Plaintiff's Claim for Declaratory Relief

In the complaint, Plaintiff alleges a claim against Defendants for declaratory relief.  (Doc. No. 1, Compl. ¶¶ 82-84.)  Plaintiff's claim for declaratory relief is based on his allegations that Defendants failed to timely provide him with notice of his rights under COBRA and/or CAL-COBRA.  (Id. ¶ 83.)  As such, Plaintiff's claim for declaratory relief is derivative of his claims for violation of 29 U.S.C. § 1166 and California Insurance Code § 10128.55.  Because Plaintiff is not entitled to a default judgment on his § 1166 claim and

22-cv-00141-H-RBB

his § 10128.50 claim, and Plaintiff's claim for declaratory relief is derivative of those claims, Plaintiff is also not entitled to a default judgment on his claim for declaratory relief.

### iv. Plaintiff's Claim for Breach of Oral Contract

In the complaint, Plaintiff alleges a claim against Defendants for breach of oral contract.  (Doc. No. 1, Compl. ¶¶ 50-57.)  Under California law, a breach of contract claim has four elements: "'(1) the existence of [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'"  Piedmont Cap. Mgmt., L.L.C. v. McElfish, 94 Cal. App. 5th 961, 968 (2023) (quoting Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011)).  In order for there to be a valid contract between the parties, there must be "mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration."  Berlanga v. Univ. of San Francisco, 100 Cal. App. 5th 75, 82 (2024); accord Levy v. Only Cremations for Pets, Inc., 57 Cal. App. 5th 203, 211 (2020).

Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor."  Cal. Civ. Code § 1605; see Blonder v. Gentile, 149 Cal. App. 2d 869, 875 (1957) ("A consideration is sufficient to support a contract if it is either beneficial to the promisor or detrimental to the promise.").  The California Supreme Court has explained that "there are two requirements in order to find consideration."  Steiner v. Thexton, 48 Cal. 4th 411, 420 (2010).  First, "[t]he promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice."  Id. at 420–21.  Second "the benefit or prejudice must actually be bargained for as the exchange for the promise.  Put another way, the benefit or prejudice must have induced the promisor's promise."  Id. at 421.

Here, Plaintiff has failed to allege sufficient facts showing that the alleged oral agreement was supported by adequate consideration.  In the complaint, Plaintiff alleges that "Defendants promise to continue providing Plaintiff with health insurance coverage,"

and in exchange "Plaintiff agreed to his severance pay and benefits." (Doc. No. 1, Compl. ¶ 51.) This is insufficient constitute valid consideration. In order to for there to be valid consideration, the promisee, here Plaintiff, must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice. <u>See</u> <u>Steiner</u>, 48 Cal. 4th at 420. Plaintiff accepting his severance pay and benefits does not confer any benefit on Defendant NTI. It also is not a prejudice to Plaintiff. Rather, severance pay and benefits are a benefit to Plaintiff, not a detriment.

Further, Plaintiff has not alleged any facts showing that the alleged consideration was bargained for as the exchange for the promise. In complaint, Plaintiff alleges that he was furloughed and/or terminated on January 29, 2021, and at that time, Kindt promised that NTI would continue to provide Plaintiff with health insurance coverage. (<u>See</u> Doc. No. 1, Compl. ¶¶ 16-17.) There are no facts showing that NTI offered to provide Plaintiff with health insurance coverage in exchange for anything.

Because Plaintiff has failed to adequately allege that the alleged oral agreement was supported by sufficient consideration, he has failed to adequately allege the existence of a valid oral agreement between the parties – a necessary element of his claim for breach of contract. <u>See</u> <u>Oasis W. Realty</u>, 51 Cal. 4th at 821. As such, Plaintiff is not entitled to default judgment on his claim for breach of oral contract.

v.    <u>Plaintiff's Claim for Intentional Misrepresentation</u>

In the complaint, Plaintiff alleges a claim against Defendants for intentional misrepresentation. (Doc. No. 1, Compl. ¶¶ 72-81.) "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" <u>Lazar v. Superior Ct.</u>, 12 Cal. 4th 631, 638 (1996); <u>accord</u> <u>Geraghty v. Shalizi</u>, 8 Cal. App. 5th 593, 597 (2017).

Here, Plaintiff has failed to allege sufficient facts showing that Defendant NTI or Kindt had knowledge that the misrepresentation at issue was false at the time it was made.

In the complaint, Plaintiff bases his claim for intentional misrepresentation on the following allegation: "On March 30, 2021, Defendant Kindt represented to Plaintiff that Plaintiff would continue to be covered under NTI's group health plan until Plaintiff found an alternative health insurance plan." (Doc. No. 1, Compl. ¶ 74.)  As to scienter, Plaintiff further alleges: "Defendants knew that their representation was false at the time they were made to Plaintiff, or Defendants made the representations recklessly and without regard for their truth." (Id. ¶ 76.)  This conclusory allegation of scienter is insufficient to properly state a claim for intentional misrepresentation, and the Court need not accept such a conclusory allegation as true.  See Iqbal, 556 U.S. at 678.

Although intent may be averred generally under Federal Rule of Civil Procedure 9(b), a plaintiff must allege sufficient facts to support an inference or render plausible that the defendant acted with the requisite intent.  In re Hydroxycut Mktg. & Sales Pracs. Litig., 299 F.R.D. 648, 659 (S.D. Cal. 2014); see United States v. Corinthian Colleges, 655 F.3d 984, 997 (9th Cir. 2011); Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009).  Plaintiff has not alleged any facts that would support an inference that Defendants knew that the representation at issue was false at the time it was made by Defendant Kindt.  To the contrary, the evidence in the record submitted by Plaintiff, supports the opposite inference.  Plaintiff's evidence shows that as of July 30, 2021, NTI's employees believed that Plaintiff was still covered under NTI's health care benefits plan and that his last day of benefits coverage would be July 31, 2021.  (See Doc. No. 34-6, Hallett Decl. Ex. D (Exhibit A); see also Doc. No. 34-7, Hallett Decl. Ex. E (letter from EDIS noting that NTI "submitted an Employee Enrollment Form for Michael Forbush signed 3/29/21").)  This evidence supports the inference that although Kindt's March 2021 statement regarding Plaintiff's enrollment in NTI's health care plan was erroneous, NTI's employees did not believe that the statement was incorrect at the time it was made.  In sum, because Plaintiff has failed to allege sufficient facts to support the element of scienter for his claim for intentional misrepresentation, Plaintiff is not entitled to a default judgment on that claim.

22-cv-00141-H-RBB

vi.   Plaintiff's Claims for Negligence and Negligent Misrepresentation

In the complaint, Plaintiff alleges claims against Defendants for negligence and negligent misrepresentation.  (Doc. No. 1, Compl. ¶¶ 58-71.)  Under California law, the elements of negligence are: (1) duty, (2) breach, (3) causation, and (4) damages.  Brown v. USA Taekwondo, 11 Cal. 5th 204, 213 (2021); Gilead Tenofovir Cases, 98 Cal. App. 5th 911, 920 (2024).  "Whether a duty exists is a question of law to be resolved by the court."  Brown v. USA Taekwondo, 11 Cal. 5th 204, 213 (2021)

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"  Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50 (2009) (citation omitted).

"The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar . . . .  [B]oth torts are defined as deceit.  However, the state of mind requirements are different.'"  Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting Intrieri v. Superior Court, 117 Cal. App. 4th 72, 85 (2004)).  "'Negligent misrepresentation lacks the element of intent to deceive.  Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.'"  Id. (quoting Intrieri, 117 Cal. App. 4th at 86).

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment."  Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 208 (1991).  "Under the respondeat superior doctrine, the term "scope of employment" has been interpreted broadly."  Purton v. Marriott Int'l, Inc., 218 Cal. App. 4th 499, 505 (2013) (citing Farmers Ins. Grp. v. Cnty. of Santa Clara, 11 Cal. 4th 992, 1004 (1995)).  The employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise.  Id.  An employer will be vicariously liable for an employee's tort if the employee's act was

an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from the employee's duties. <u>Id.</u> "Thus, an employer's vicarious liability may extend to the employee's negligence, willful and malicious torts, or acts that contravene an express company rule and confer no benefit to the employer." <u>Id.</u>

Plaintiff has adequately stated claims against Defendant NTI for negligence and negligent misrepresentation. Plaintiff alleges that he was employed by Defendant NTI, and as Plaintiff's employer, Defendant NTI owed him a duty to use reasonable care in discharging their obligations. (Doc. No. 1, Compl. ¶¶ 15, 59.) <u>See</u> <u>Brown v. Sharphouser Contracting Co.</u>, 159 Cal. 89, 93 (1910) (holding that an employer owes its employees a duty of "ordinary care"); <u>see also</u> <u>Brown</u>, 11 Cal. 5th at 214 (explaining that "the law imposes a general duty of care on a defendant . . . when it is the defendant who has created a risk of harm to the plaintiff, including when the defendant is responsible for making the plaintiff's position worse."). Plaintiff further alleges that Defendant NTI breached this duty by failing to timely and adequately provide proper notification of his termination under ERISA as amended by COBRA. (<u>See</u> Doc. No. 1, Compl. ¶¶ 18, 22, 32-33, 60.) Section 1166(a)(2) "provides that within 30 days of employment termination, 'the employer of an employee under a plan must notify the administrator of [the employment termination] . . .'" <u>Jass</u>, 472 F. Supp. 3d at 801 (quoting 29 U.S.C. § 1166(a)(2)). Plaintiff alleges, as corroborated by the evidence in the record, that he experienced a qualifying event on January 29, 2021, but NTI did not attempt to provide a COBRA notification until July 30, 2021. (<u>See</u> Doc. No. 1, Compl. 16, 18, 22; Doc. No. 34-6, Hallett Decl. Ex. D (Exhibit A); Doc. No. 34-7, Hallett Decl. Ex. E.) NTI's failure to provide proper notice under COBRA is sufficient to demonstrate a breach by NTI under the doctrine of negligence per se. <u>See</u> <u>Quiroz v. Seventh Ave. Ctr.</u>, 140 Cal. App. 4th 1256, 1285 (2006) (listing the requirements for establishing negligence per se).

In addition, Plaintiff alleges that NTI employees, specifically, Plaintiff's supervisor Defendant Kindt, represented to Plaintiff more than once that he would continue to be

covered under NTI's group health care plan even after his furlough. (Doc. No. 1, Compl. ¶¶ 17, 19-20, 64-65.) These representations were false, and Defendant NTI's employees should have known they were false and had no reasonable grounds for believing they were true because Plaintiff was clearly not covered under the term of NTI's health care plan with EDIS since he was not a full-time employee at that time. (Id. ¶¶ 23, 25, 66-67; see also Doc. No. 34-7, Hallett Decl. Ex. E.)

Further, NTI's failure to provide proper COBRA notice and its misrepresentations to Plaintiff were the actual and proximate cause of Plaintiff's injuries. Plaintiff incurred substantial medical bills when he suffered a heart attack which required emergency heart surgery and those bills were not covered by any health insurance plan. (Doc. No. 1, Compl. ¶ 21.) These medical bills would have been covered under a COBRA and/or CAL-COBRA plan had NTI provided proper COBRA notice and had it not made the misrepresentations at issue, which Plaintiff reasonably relied on. (Id. ¶¶ 26, 34-35, 61, 69-70.) Finally, Plaintiff suffered damages in the form of the uncovered medical bills he incurred. (Id. ¶¶ 62, 70; see also Doc. No. 34-3, Hallett Decl. Ex. A.) In sum, Plaintiff has adequately stated claims against Defendant NTI for negligence and negligent misrepresentation

Although Plaintiff has adequately stated claims against Defendant NTI for negligence and negligent misrepresentation, Plaintiff has not adequately stated those claims against Defendant Kindt. Kindt was Plaintiff's supervisor, not his employer. (See Doc. No. 1, Compl. ¶¶ 10, 14.) As such, Kindt, unlike NTI, did not have any obligations under ERISA as amended by COBRA to provide notice of Plaintiff's termination. See 29 U.S.C. § 1166(a)(2). Further, although Plaintiff's allegations and evidence when accepted as true are sufficient to demonstrate that NTI employees made various negligent misrepresentations to Plaintiff regarding the status of his coverage under NTI's health care plan, the allegations and evidence are insufficient to specifically show that those misrepresentations are attributable specifically to Defendant Kindt as opposed to other employees, such as NTI's human resources employees or NTI's corporate controller. Indeed, there is evidence in the record showing that NTI's human resources department

22-cv-00141-H-RBB

and corporate controller also mistakenly believed that Plaintiff was covered under NTI's group health care plan at the time of Plaintiff's heart surgery and that NTI's human resources department also made representations to Plaintiff stating that he was covered during that period. (See Doc. No. 34-6, Hallett Decl. Ex. D (Exhibit A); Doc. No. 34-7, Hallett Decl. Ex. E.) In light of this, Plaintiff is not entitled to a default judgment against Defendant Kindt on his claims for negligence and negligent misrepresentation.

### vii.    Conclusion

In sum, Plaintiff has adequately and sufficiently stated claims for negligence and negligent misrepresentation against Defendant NTI. But Plaintiff has not adequately stated any claims against Defendant Kindt. As such, the Court denies Plaintiff's motion for default judgment as to Defendant Kindt. See Ewing, 2019 WL 4193363, at *2 ("[I]f assuming the truth of the factual allegations in the complaint, the complaint does not state a claim against a defendant who is in default, the plaintiff is not entitled to default judgment against that defendant."); United States ex rel. Lesnik v. Eisenmann SE, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) ("[A] court may not enter a default judgment if, taking all well-pleaded factual allegations as true, the court finds that Plaintiffs are not entitled to relief."); see, e.g., DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854–55 (9th Cir. 2007) (affirming the denial of a motion for default judgment where the complaint failed to state a claim). The Court will proceed to analyze the remaining Eitel factors as to Defendant NTI.

### C.    The Other Eitel Factors

As to the other Eitel factors, Plaintiff would be prejudiced absent a default judgment on its well-pleaded claims against Defendant NTI because its failure to appear in this action leaves Plaintiff with no other recourse. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

There is no dispute as to material facts because Defendant NTI has not appeared to contest Plaintiff's allegations. See Pepsico, 238 F. Supp. 2d at 1177. And Defendant NTI's failure to appear or otherwise defend does not appear to be due to excusable neglect. See

1  *United States v. $148,145,00 In U.S. Currency*, No. CV1800670SJOGJS, 2018 WL
2  6038303, at *8 (C.D. Cal. July 16, 2018) ("The possibility of excusable neglect is remote
3  where the defendant is provided proper notice of the pending suit, but does not contact the
4  court or the plaintiff in any manner.").

5  As to the "amount of money at stake" factor, it requires a court to "consider the
6  amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*,
7  238 F. Supp. 2d at 1176. This is because "default judgments are disfavored where the
8  amount at stake "'is too large or unreasonable in light of [the] defendant's actions.'" *Sec.*
9  *& Exch. Comm'n v. Pedras,* No. CV137932GAFMRWX, 2014 WL 12597332, at *6 (C.D.
10 Cal. Apr. 16, 2014) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL
11 1545173, at *12 (N.D. Cal. May 29, 2007)). Although Plaintiff seeks a substantial damages
12 award in the amount of $498,223.56 against NTI, the amount sought by Plaintiff is
13 reasonable in light of the misconduct properly alleged.

14 Finally, although the Court recognizes the strong policy favoring decisions on the
15 merits, proceeding with the instant litigation would be futile given Defendant NTI's failure
16 to appear. *See* *Pepsico*, 238 F. Supp. 2d at 1177; *Elektra Entm't Group, Inc. v. Crawford*,
17 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("'[D]efendant[']s failure to answer plaintiff[s']
18 complaint makes a decision on the merits impractical if not impossible.'"); *Pedras*, 2014
19 WL 12597332, at *7 ("[T]he policy of deciding cases on the merits does not preclude the
20 Court from entering default judgment."). Accordingly, the Court determines that default
21 judgment is appropriate on Plaintiff's claims for negligence and negligent
22 misrepresentation against Defendant NTI.

23 **D.** **Relief Sought**

24 In his motion for default judgment, Plaintiff seeks the following forms of relief
25 against Defendant NTI: (1) statutory damages; (2) compensatory damages; (3) punitive
26 damages; (4) costs; (5) attorney fees; (6) prejudgment interest; and (7) post-judgment
27 interests. (Doc. No. 34-1 at 17-22.) The Court addresses each of these requests for relief
28 in turn below.

i.    Statutory Damages and Attorney's Fees

Plaintiff requests an award of statutory damages, including penalties, and attorney's fees pursuant to his ERISA claim, specifically pursuant to 28 U.S.C. §§ 1132(a)(1)(B), (c), and (g)(1).  (Doc. No. 34-1 at 17-18, 20-21.)  Plaintiff is not entitled to a default judgment against Defendant NTI on his ERISA claim.  See supra Order at Section II.B.i.  As such, Plaintiff is not entitled to statutory damages or attorney's fees based on that claim, and the Court denies Plaintiff's request for statutory damages and attorney's fees against Defendant NTI.

ii.    Compensatory Damages

Plaintiff requests an award of $498,223.56 in compensatory damages for his claims for negligence and negligent misrepresentation.  (Doc. No. 34-1 a 18-19.)  For tort claims in California, the proper measure of damages "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal Civ. Code § 3333.   Under this provision, tort damages "are awarded to fully compensate the victim for all the injury suffered."  Santa Barbara Pistachio Ranch v. Chowchilla Water Dist., 88 Cal. App. 4th 439, 446 (2001).  "There is no fixed rule for the measure of tort damages under Civil Code section 3333.   The measure that most appropriately compensates the injured party for the loss sustained should be adopted." Id. at 446–47.  "This broad measure of tort damages is consistent with the object of tort law 'to compensate the victim for injury suffered' and 'to vindicate social policy.'"  W. Pac. Elec. Co. Corp. v. Dragados/Flatiron, 534 F. Supp. 3d 1209, 1253 (E.D. Cal. 2021) (quoting Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 514, 516 (1994)).

In his motion, Plaintiff correctly calculates his compensatory damages as the amount of medical expenses that would have been covered under Defendant NTI's health plan had Defendant properly provided the required notice under COBRA.  In addition, Plaintiff has provided the Court with sufficient evidence to support the specific amount of compensatory damages requested.  The evidence submitted by Plaintiff shows that Plaintiff was billed a total amount of $511,223.56 for medical services related to his heart surgery.  (See Doc.

No. 34-2, 34-3 Hallett Decl. ¶ 3, Ex. A.)  And had Plaintiff been covered under NTI's group health care plan, Plaintiff would have had an out-of-pocket maximum of $13,000.00, meaning that at least $498,223.56 of the $511,223.56 total amount would have been covered by the health care plan.  (See Doc. No. 34-1 at 17, 18-19.)  As such, the Court grants Plaintiff's request for $498,223.56 in compensatory damages against Defendant NTI for Plaintiff's claims for negligence and negligent misrepresentation.

### iii.   Punitive Damages

Plaintiff requests an award of $44,038.47 in punitive damages pursuant to his claim for intentional misrepresentation against Defendant NTI.  (Doc. No. 34-1 at 19-20.)  Plaintiff is not entitled to a default judgment against Defendant NTI on his claim for intentional misrepresentation.  See supra Order at Section II.B.v.  As such, Plaintiff is not entitled to punitive damages based on that claim, and the Court denies Plaintiff's request for punitive damages against Defendant NTI.

### iv.   Costs

Plaintiff requests an award of $1,078.14 in costs pursuant to Federal Rule of Civil Procedure 54(d)(1).  (Doc. No. 34-1 at 20.)  Under Rule 54(d)(1), a prevailing party is entitled to costs other than attorney's fees.  See Fed. R. Civ. P. 54(d)(1); S.D. Cal. Civ. L.R. 54.1(a).  "By its terms, [Rule 54(d)(1)] creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." Ass'n of Mexican-Am. Educators v. State of California, 231 F.3d 572, 591 (9th Cir. 2000). Further, "a district court's discretion to award costs is limited to particular types of costs enumerated in 28 U.S.C. § 1920." In re Online DVD-Rental Antitrust Litig., 779 F.3d 914, 926 (9th Cir. 2015).

Plaintiff has provided the Court with evidence showing that he incurred $402.00 in fees related to the filing of the complaint and $247.53 in fees related to service of the complaint and summons on the Defendants.  (Doc. No. 34-2, Hallett Decl. ¶ 28.)  Plaintiff is entitled to these costs under 28 U.S.C. § 1920 and Civil Local Rule 54.1(b)(1).  See 28 U.S.C. § 1920; S.D. Civ. L.R. 54.1(b)(1); see, e.g., Ameris Bank v. Soorma Trucking LLC,

22-cv-00141-H-RBB

No. 8:24-CV-02021 RGK (JDEX), 2025 WL 71081, at *5 (C.D. Cal. Jan. 8, 2025) ("As the party awarded default judgment and damages, Balboa is the prevailing party and thus may recover costs associated with the civil filing fee and service of process . . . .").

Plaintiff has also provided the Court with evidence showing that he incurred $428.61 in fees for "obtaining the medical records of Plaintiff." (Doc. No. 34-2, Hallett Decl. ¶ 28.) But general fees incurred related to the obtaining of medical records are not taxable absent a further showing. See 28 U.S.C. § 1920; S.D. Civ. L.R. 54.1(b)(6); Online DVD-Rental Antitrust Litig., 779 F.3d at 927–28. As such, the Court denies Plaintiff's request for $428.61 in fees for obtaining Plaintiff's medical records.

In sum, the Court grants Plaintiff's request for costs pursuant to Federal Rule of Civil Procedure 54(d)(1). The Court awards Plaintiff $649.53 in costs.

v.     Pre-Judgment Interest

Plaintiff requests an award of pre-judgment interest for his ERISA claim, his breach of contract claim, and his tort claims. (Doc. No. 34-1 at 21-22.) Plaintiff is not entitled to a default judgment against Defendant NTI on his ERISA claim or his breach of contract claim. See supra Order at Sections II.B.i, II.B.iv. As such, Plaintiff is not entitled to an award of pre-judgment interest on either his ERISA claim or his breach of contract claim.

Nevertheless, Plaintiff is entitled to pre-judgment interest on his claims for negligence and negligent misrepresentation against Defendant NTI. "Whether prejudgment interest is permitted in a particular case is a matter of statutory interpretation, federal common law, and, in some instances, state law." Schneider v. Cnty. of San Diego, 285 F.3d 784, 789 (9th Cir. 2002). "Under California law, prejudgment interest is governed by Civil Code section 3287 and is recoverable in any action in which damages are certain or 'capable of being made certain by calculation' and the right to recover such damages is vested in the plaintiff on a particular day." Cataphora Inc. v. Parker, 848 F. Supp. 2d 1064, 1072 (N.D. Cal. 2012) (quoting Cal. Civ. Code § 3287(a)). The test for recovery of prejudgment interest under § 3287(a) is whether the defendant actually knows the amount owed or from reasonably available information could the defendant have computed that

amount.  <u>Children's Hosp. & Med. Ctr. v. Bonta</u>, 97 Cal. App. 4th 740, 774 (2002).
Prejudgment interest cannot be awarded under § 3287(a) when the amount of damages
cannot be ascertained except on conflicting evidence.  <u>Id.</u>; <u>Cataphora</u>, 848 F. Supp. 2d at
1072.  "The rationale behind the rule is that where a defendant does not know what amount
he owes and cannot ascertain it except by accord or judicial process, he cannot be in default
for not paying it."  <u>Cataphora</u>, 848 F. Supp. 2d at 1072.

Here, Plaintiff's compensatory damages for his negligence and negligent
misrepresentation claims were capable of being made certain by calculation.  The amount
of damages could have been calculated based on a review of Plaintiff's medical bills and
his health care plan.  And that calculation was ascertainable by at least October 22, 2021 –
the date in which Plaintiff received an explanation of benefits from EDIS stating that it was
denying coverage for the medical bills related to Plaintiff's heart surgery.  (See Doc. No.
34-2, 34-3 Hallett Decl. ¶ 3, Ex. A.)  As such, Plaintiff is entitled to prejudgment interest
pursuant to by Civil Code § 3287(a).  The Court awards Plaintiff prejudgment interest of
7% per annum beginning on October 22, 2021.  <u>See Yoon Chul Yoo v. Arnold</u>, No. CV-
09-07483-MMM-CWX, 2013 WL 12335872, at *11 (C.D. Cal. Mar. 25, 2013) ("Where
tort damages are recovered, courts have generally applied a prejudgment interest rate of
7% per annum." (citing <u>Children's Hosp. & Med. Ctr.</u>, 97 Cal. App. 4th at 775); <u>uSens,
Inc. v. Chongqing Junma New Energy Auto. Co.</u>, No. 19-CV-00315-BLF, 2022 WL
410938, at *4 (N.D. Cal. Feb. 10, 2022) ("Under California law, the prejudgment interest
rate is set at 7 percent except in cases involving a contract entered into in 1986 or later."
(citing Cal. Const. art. XV, § 1)).

vi.    <u>Post-Judgment Interest</u>

Plaintiff requests an award of post-judgment interest pursuant to 28 U.S.C. §
1961(a).  (Doc. No. 34-1 at 22.)  Under 28 U.S.C. § 1961, "post-judgment interest on a
district court judgment is mandatory."  <u>Air Separation, Inc. v. Underwriters at Lloyd's of
London</u>, 45 F.3d 288, 290 (9th Cir. 1995).  "The post-judgment interest rate under the
statute is set at 'a rate equal to the weekly average 1-year constant maturity Treasury yield,

22-cv-00141-H-RBB

as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.'" DLI Assets, LLC v. Pirate Gem, LLC, No. 17-CV-02216-BAS-NLS, 2018 WL 1920219, at *6 (S.D. Cal. Apr. 23, 2018) (quoting 28 U.S.C. § 1961(a)); see Fid. Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1023 (9th Cir. 2004). Because an award of post-judgment interest at the federal statutory rate is mandatory, the Court grants Plaintiff's request for post-judgment interest pursuant to 28 U.S.C. § 1961(a) against Defendant NTI.

## Conclusion

For the reasons above, the Court grants in part and denies in part Plaintiff's motion for default judgment. Specifically, the Court enters a default judgment in favor of Plaintiff and against Defendant NTI on Plaintiff's claims for negligence and negligent misrepresentation, and the Court awards Plaintiff: (1) $498,223.56 in compensatory damages; (2) $649.53 in costs; (3) prejudgment interest of 7% per annum beginning on October 22, 2021; and (4) post-judgment interest according to the statutory rate set forth in 28 U.S.C. § 1961(a).

The Court declines to enter a default judgment against Defendant Kindt on any of Plaintiff's claims. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATED: February 5, 2025

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT